IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00843-MSK-CBS

CONSTANCE A. MARKER,

       Plaintiff,

v.

THE RETIRED ENLISTED ASSOCIATION, INC., CHAPTER 3, and
FRED WILLIS,

       Defendants.
_____

# OPINION AND ORDER REMANDING ACTION
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Partial Motion to Dismiss the Third Claim for Relief **(# 4)**, the Plaintiff's response **(# 8)**, and the Defendants' reply **(# 9)**; the Defendants' Motion for Summary Judgment **(# 15)**, the Plaintiff's response **(# 18)**, and the Defendants' reply **(# 21)**.[1]

## FACTS

The Plaintiff, Ms. Marker, was employed as an Administrative Assistant by Defendant The Retired Enlisted Association, Inc. ("TREA"). Ms. Marker alleges that in 2004, she began complaining to TREA's management of unwanted sexual harassment by her co-workers. In addition, Ms. Marker, who is white, alleges that she was subjected to discrimination on the basis

---

[1] Because the Court does not reach the substantive merits of the Defendants' summary judgment motion, the Court does not consider the Defendants' Motion to Strike **(# 22)** an exhibit to the Plaintiff's summary judgment response.

1

of her race and sex, in that members of TREA complained that "a white woman should not be running a predominantly black [and male] club." In 2006, the Defendant, Mr. Willis, assumed the Presidency of TREA. Despite his knowledge of her complaints, Mr. Willis refused to take action to prevent the co-workers from continuing to harass her.

On June 13, 2006, Mr. Willis sent a letter to Ms. Marker, criticizing her work performance in various respects, and directing Ms. Marker to appear at a meeting with him on June 26, 2006. Believing that the letter and meeting were a "set-up," intended to effectuate her termination on "trumped up accusations," Ms. Marker prepared a responsive letter that addressed the criticisms against her and raised an accusation that Mr. Willis, who held another job at a U.S. Government agency, had been misusing a postal meter at that agency to send mailings on behalf of TREA. Ms. Marker tendered her letter to Mr. Willis at the June 26, 2006 meeting, whereupon Mr. Willis immediately terminated her employment.

In her Complaint **(# 2)**, Ms. Marker raised four claims for relief: (i) discrimination on the basis of sex and race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; (ii) retaliation in violation of Title VII; (iii) wrongful discharge in violation of public policy under Colorado law; and (iv) tortious interference with contract, in that Mr. Willis purposefully and wrongfully interfered with Ms. Marker's contractual relationship with TREA.[2]

The Defendants moved to dismiss **(# 4)** Ms. Marker's wrongful discharge in violation of public policy claim, arguing that it failed to state a claim under Colorado law because Ms. Marker did not allege that she had been instructed to perform an illegal act, refrain from

---

[2]Ms. Marker originally filed this action in the Colorado District Court for Adams County. The Defendants removed **(# 1)** the action to this Court on the grounds that Ms. Marker's Title VII claims gave rise to federal question jurisdiction under 28 U.S.C. § 1331.

performing a public duty, or refrain from exercising an important job-related right.

Thereafter, the Defendants moved for summary judgment **(# 15)** on all four of Ms. Marker's claims. For reasons explained below, it is unnecessary to summarize the Defendants' contentions with regard to Ms. Marker's Title VII claims. With regard to the state-law claims, the Defendants alleged that: (i) as to her wrongful discharge claim, she cannot establish that she was instructed to perform an illegal act or refrain from exercising a public duty or job-related privilege, nor that she was terminated as a result of disobeying such an instruction; and (ii) with regard to her tortious interference claim, she cannot establish that Mr. Willis' interference with any contract was improper, nor can she show that it was undertaken solely with the desire to induce TREA to breach its contract with her. In addition, the Defendants' seek summary judgment in their favor on their affirmative defense that Ms. Marker's claims are barred by the Defendants' "after-acquired evidence" defense – *i.e.* that acts of misconduct by Ms. Marker during her employment, discovered by the Defendants only after her termination had been effected, would themselves have inevitably resulted in her termination regardless of whether the nominal grounds for her dismissal were proper.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of

law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Motion to Dismiss**

The Defendants' motion to dismiss challenges the sufficiency of Ms. Marker's pleading of the wrongful discharge claim. The Defendants' subsequent motion for summary judgment challenges Ms. Marker's ability to prove that claim on its merits. Because the summary judgment motion duplicates the arguments contained in the motion to dismiss, the Court denies the motion to dismiss as moot.

**C. Jurisdictional issues**

In response to the Defendants' summary judgment motion, Ms. Marker stated that "while [she] asserts that evidence in this case supports these claims, [she] moves for dismissal" of both claims arising under Title VII.[3] In light of the considerations discussed below, and given that Ms. Marker no longer wishes to proceed on those claims, the Court finds it appropriate to grant dismissal of those claims pursuant to Fed. R. Civ. P. 41(a).

This Court's subject matter jurisdiction over this action was predicated entirely on the fact that the Title VII claims involved federal questions pursuant to 28 U.S.C. § 1331. Dismissal of all claims supporting federal subject matter jurisdiction gives rise to the question of whether the Court should continue to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3) provides that the Court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." In determining whether to exercise its discretion to exercise supplemental

---

[3]Ms. Marker subsequently submitted a Motion to Dismiss **(# 19)** the Title VII claims. The Court denied **(# 20)** the motion for procedural defects, granting Ms. Marker leave to refile it.

jurisdiction in these circumstances, the Court must consider the values of judicial economy, convenience, fairness, and comity. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).

Turning first to the question of judicial economy, the Court notes that discovery is complete in this action, and the only matters left for judicial involvement are resolution of the summary judgment motion and trial of the case. Given its familiarity with the facts and issues in this case – admittedly, a familiarity that only arises by virtue of this Court's review of the summary judgment motion for purposes of this Opinion – this factor tips slightly in favor of the Court exercising supplemental jurisdiction. A remand of the remaining claims back to state court would require that court to familiarize itself anew with the factual and legal issues presented her before proceeding to trial, resulting in some minor duplication of effort. This Court is aware of its own congested calendar, but has no knowledge of the condition of judicial calendars in the state District Court for Adams County, where this matter would be remanded, making it difficult to determine which jurisdiction would be able to afford the parties a more rapid trial. Discovery in this case is complete, and there is no apparent reason why the discovery conducted in this Court could not be used with equal effect in state or federal court. Thus, on balance, the factor of judicial economy weighs slightly in favor of this Court retaining jurisdiction.

The second factor, convenience, is largely neutral. This Court has issued no orders with continuing effect that would have to be reconsidered or modified upon remand, nor are there any particular reasons why, other than changing the caption of future pleadings, the parties would be particularly inconvenienced by engaging in all further proceeding in the state court. Neither

6

court in unusually convenient or inconvenient to the parties, who, according to the Complaint, reside in Denver and Adams Counties. The Court assumes that, to the extent there are non-party witnesses in this matter, those witnesses likely live in the vicinity of TREA in Adams County, perhaps making that forum slightly more convenient than this Court, which sits in downtown Denver. Thus, to the extent the convenience factor adds meaningful weight to the calculus, it weighs very slightly in favor of remand.

The third factor requires the Court to consider the fairness of retention or remand. Ms. Marker's motion to dismiss suggests that the Defendants would object to a dismissal of her Title VII claims if the effect of that dismissal is to deprive the Court of jurisdiction and force a remand of the case, but the Defendants' summary judgment reply expresses no such concern.[4] Arguably, were this Court to remand the action before it reaches the substantive merits of the summary judgment motion – a motion on which the Court is otherwise prepared to rule – both parties would be disadvantaged by the inevitable delay that would almost certainly result from remand, where one would expect that resolution of the motion would be delayed for some indefinite period as the motion worked its way to the top of the presiding judge's pile of pending dispositive motions. Thus, this factor tips slightly in favor of this Court retaining the case.

Finally, the Court considers the issue of comity. Normally, "notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the

---

[4]Rather, the Defendants request that the Court "simply grant Defendants' motion for summary judgment" with regard to these claims. Whether the Title VII claims are disposed of by means of voluntary dismissal by the Plaintiff or entry of judgment in favor of the Defendants is immaterial – either action disposes of the claims supporting federal jurisdiction and prompts the question of whether continued supplemental jurisdiction over the remaining state claims is warranted.

contrary." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995). Thus, the "most common response" in these circumstances is to effect a remand. *Id.* It is particularly appropriate to remand the case where the state law cause of action is "in a process of current evolution." *Id.*

The parties' briefs reveal a dispute as to the precise contours of Colorado law with regard to the claim for wrongful discharge in violation of public policy. The Defendants argue that the Court should strictly construe the decision of the Colorado Supreme Court in *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992), where the wrongful discharge claim was first recognized. In *Lorenz*, the Court recognized that a discharge in violation of public policy could arise in three types of situations: (i) where the employer "directed the employee to perform an illegal act as part of the employee's work related duties," (ii) where the employer "prohibited the employee from performing a public duty," or (iii) where the employer prohibited the employee "from exercising an important job-related right or privilege." *Id.* However, in articulating the remaining elements of the claim, the Court stated that the employee must further prove that he or she "was terminated as the result of <u>refusing to perform the act directed</u> by the employer." *Id.* (emphasis added). Thus, the Defendants read *Lorenz* as permitting the claim only where the employee has directly disobeyed an express instruction by the employer that the employee do or refrain from doing a particular thing.

Mr. Marker contends that the elements recited in *Lorenz* have evolved as the claim has become more recognized. She contends that under the current conception of the claim, she need only prove that she was terminated because the Defendants knew she had "discovered and complained . . . about the illegal activities." Her conception of the claim is indeed supported by a number of Colorado cases that appear to recognize the claim in situations where the employee

8

has engaged in unilateral "whistleblowing," rather than disobeying a specific employer directive. *See e.g. Kearl v. Portage Environmental, Inc.*, ___ P.3d ___, 2008 WL 5352371 (Colo. App., Dec. 24, 2008) (unpublished) (reciting element as requiring a showing that "the defendant discharged him or her in retaliation for exercising a job-related right or performing a specific statutory duty" and finding error in court's dismissal of public policy claim where employee had "attempt[ed] to prevent the employer's participation in defrauding the government"); *Flores v. Am. Pharm. Servs., Inc.*, 994 P.2d 455, 459 (Colo.App. 1999) (affirming jury verdict on public policy claim where employee was terminated for informing supervisor of co-worker's committing insurance fraud).

The Court has some doubt that Colorado law compels a reading of *Lorenz* as strictly as the Defendants urge. Indeed, the Defendants cite to no case that has squarely addressed the question, finding that the claim can only lie where an employee disobeys an express instruction from the employer and refusing to recognize the claim where the employee has unilaterally reported misconduct by the employer. However, assuming, without finding, that there is a genuine inconsistency in Colorado law governing the elements of a wrongful discharge claim, principles of comity favor having the state courts, rather than the federal court, clarify the matter.[5] Thus, to the extent that issues of comity are implicated by the Court's consideration of

---

[5]The Defendants further distinguish cases such as *Flores* and *Kearl* on the grounds that the employees there were reporting misconduct in connection with their own employer's operations. Here, on the other hand, Ms. Marker was threatening to expose misconduct by Mr. Willis in conjunction with an employer other than TREA. (Arguably, however, Mr. Willis' misconduct affected TREA as well, insofar as it was mailings on behalf of TREA that he was improperly posting.)
Neither party cites to Colorado law addressing the question of whether the wrongful discharge claim requires whistleblowing that involve the employer's <u>own</u> operations, or whether a threat to disclose some unlawful or improper <u>private</u> conduct by a supervisor is sufficient to

9

the state law claims, this factor tips strongly in favor of remand.

Taking these considerations as a whole, then, the Court finds that the appropriate course of action is to decline to exercise supplemental jurisdiction and to remand the matter to the Colorado state court. The only adverse consequences to the parties will be a potential delay in resolution of the merits of the summary judgment motion and trial in the matter. However, a remand will ensure that the parties have their disputes as to the legal scope of the wrongful discharge claim resolved, appropriately, in the state courts.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Partial Motion to Dismiss **(# 4)** is **DENIED AS MOOT**. The Court construes Ms. Marker's summary judgment response as a motion to voluntarily dismiss the Title VII claims, and that Court **GRANTS** that motion pursuant to Fed. R. Civ. P. 41(a)(2). Ms. Marker's first and second claims for relief, alleging violations of Title VII are **DISMISSED** with prejudice. Finding that it would be inappropriate to exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(c)(3), the Court finds that it lacks subject matter jurisdiction over the remainder of this action.

---

state the claim. On the one hand, recognizing the claim in such circumstances is consistent with Colorado's desire to ensure that employees are not placed in the position of having to either abide another's illegal conduct or lose their job. *See e.g. Lorenz*, 823 P.2d at 109. On the other hand, allowing an employee to threaten to expose private misconduct (*e.g.* private drug use, domestic violence, or tax evasion) by a supervisor in order to avoid the loss of a job begins to resemble a form of blackmail, even though the public policies prohibiting such private misconduct are well-established. This, too, may be a matter of uncertainty in Colorado law – one which is best left to the state courts to resolve.

Accordingly, the matter is **REMANDED** to the Colorado District Court for Adams County pursuant to 28 U.S.C. § 1447(c). The Clerk of the Court shall transmit the entire case file to the Clerk of the Colorado District Court for Adams County, and then close this case.

Dated this 27th day of March, 2009

BY THE COURT:

_/s/ Marcia S. Krieger_

Marcia S. Krieger
United States District Judge